# Sherrill v. Hutson.

*Bill to Declare Sale of Stock Fraudulent and Void.*

(Decided May 21, 1914.   65 South. 538.)

1. *Corporations; Purchase of Stock By; Rights of Creditors.*— Where an insolvent corporation purchases its own stock and pays for the same out of its assets, creditors may recover the value of payments received where such stockholders sold with knowledge of the insolvency of the corporation and with intent to hinder or delay creditors; the transaction was a fraud upon creditors who were entitled to look to the assets of the corporation for payment of their claim, and this is true although the creditors do not rely upon the trust fund doctrine.

2. *Same.*—Where, with knowledge of its insolvency and with intent to hinder and delay creditors, shareholders sold their shares to the corporation, the transaction is tainted with actual fraud, and can be impeached by subsequent as well as existing creditors; if not tainted

with actual fraud, such transaction will be void only as to existing creditors.

3. *Bankruptcy; Power of Trustee; Corporation.*—The trustee in bankruptcy of an insolvent corporation may recover from former shareholders money received by them for the sale of their share of the stock to the corporation having knowledge of its insolvency; a trustee as such stands in the place of the creditors.

4. *Same; Action by; Pleading.*—The fact that the bill joins other stockholders charged with similar transactions does not render it objectionable, where filed by a trustee in bankruptcy of an insolvent corporation to recover from a former shareholder money received from the corporation for a purchase of his shares.

5. *Appeal and Error; Review; Presentation Below.*—Where no assignments of demurrer are aimed at or specify defects in a bill, such defects will not be considered on appeal.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by P. R. Hutson as trustee in bankruptcy of the Twin City Installment Company against John W. Sherrill and others, to have certain transfers of stock set aside as fraudulent, and to recover of such shareholders the money received from the insolvent corporation in the sale of such stock. From a decree overruling demurrers to the bill, respondent John W. Sherrill appeals. Affirmed.

EYSTER & EYSTER, and CHENAULT & CHENAULT, for appellant. Under the allegations of the bill and the definition of insolvency the corporation was not insolvent when the transactions took place.—*Corey v. Wadsworth*, 99 Ala. 78. The trust fund doctrine has been departed from, and although modified some by § 3509, Code 1907, this did not help complainants.—199 Fed. 449; *O'Bear v. Volfer*, 106 Ala. 205; *Corey v. Wadsworth*, 118 Ala. 488. Having fully paid for his stock Sherrill was not liable for the debts of the corporation. —§ 3468, Code 1907. Subsequent creditors are not prejudiced by the purchase by the corporation of its own stock.—141 Wis. 377; 10 Cyc. 1109; *Wilson v. Stevens*,

129 Ala. 636. General averments of fraud or fraudulent conduct are not sufficient.—*Steiner v. Parsons,* 103 Ala. 232. Where the legal remedy is complete and adequate, fraud of itself will not give equity jurisdiction.—*Peebles v. Burns,* 77 Ala. 290. He who asks, equity must do equity.—*Higman v. Humes,* 133 Ala. 619.

KYLE & HUTSON, for appellee. No brief reached the Reporter.

GARDNER, J.—The bill shows that the complainant in this cause has been duly elected trustee of the bankrupt estate of the Twin City Installment Company, a corporation, which was adjudged a voluntary bankrupt by the District Court of the United States for the Northern Division of Alabama, and that complainant was authorized and empowered by the referee in bankruptcy of said court to file this bill. The bill is filed against appellant John W. Sherrill, J. G. Johnsey, and George W. Mills, stockholders in said corporation, and seeks to have set aside as fraudulent and void transactions whereby said stockholders sold their stock to one W. C. Bulman as manager of said corporation and received payment therefor from the funds of said corporation, and a recovery of the same. The appellant alone appeared in the cause, and demurred to the bill, and from the decree overruling his demurrer this appeal is prosecuted by him.

We are concerned therefore, principally, only with the averments of the bill in so far as they affect the appellant.

The third paragraph of the bill shows who were the stockholders of said corporation in June, 1910, and the amount held by each, this appellant owning 20 shares,

and that one W. C. Bulman was the president and manager, and B. W. Watson, treasurer, of said corporation. It is further alleged: That at that time the said corporation owed debts then due and unpaid largely in excess of its assets, "and that said corporation, at said time, was wholly insolvent." That in August, 1910, each of said officers and stockholders, to quote from the bill—was "aware of the financial condition of said corporation, and knew at that time the same was insolvent, and with the intent to hinder, delay, and defraud the creditors of said corporation, in said month, the respondent, John W. Sherrill, realizing the insolvent condition of said corporation, agreed with W. C. Bulman, who was at that time general manager of said corporation, with authority to transact all its business except the execution of checks, to sell him said 20 shares of stock for a consideration of about $2,250, to the said W. C. Bulman as manager of the said corporation, and the said W. C. Bulman to pay for said stock out of the assets of the said corporation. And complainant avers that in consummation of said agreement, respondent, John W. Sherrill, transferred to the said W. C. Bulman all his shares of stock in said corporation, and the said W. C. Bulman executed to respondent, John W. Sherrill, notes to the amount of approximately $2,250. And plaintiff avers that said notes were executed by W. C. Bulman as manager of the Twin City Installment Company, and that all of said notes with the exception of approximately $250 have been paid to the said John W. Sherrill out of the assets of the said Twin City Installment Company."

We do not deem it necessary to discuss each assignment of demurrer separately, but will treat the bill in a general way.

The bill shows that in reality the sale of the stock was by the stockholders to the corporation, payment for which was made out of the assets of said corporation, the insolvency of the corporation, a knowledge of such condition on the part of the stockholders, and goes further and alleges the transfer was made to hinder, delay and defraud its creditors. It is further alleged that:

"The aforesaid transactions between said W. C. Bulman as manager of the Twin City Installment Company, and respondent, John W. Sherrill, were acquiesced in and agreed to by the stockholders of said Twin City Installment Company."

The said corporation was adjudged a voluntary bankrupt in August, 1911.

"Whether pursued on the trust-fund theory, or on the ground of fraud, there is no doubt that prejudiced creditors may follow and apply to their claims property or money transferred by an insolvent corporation in the purchase of its own stock. The funds represented by the capital stock of the corporation cannot be impaired to the advantage of the members of the corporation at the expense of its creditors. *So money paid by an insolvent corporation for shares of its own stock is property fraudulently transferred which may be reached and subjected by a creditor to his claim by a bill in equity.*" (Italics ours.) Jones on Insolvent & Failing Corporations, § 254.

We are there cited in the note to our own authority, *Hall v. Ala. Terminal Co.*, 143 Ala. 464, 39 South. 285, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363, wherein, speaking to the same effect, it was said:

"The purchase by a corporation of shares of its own capital stock is a fraud upon its creditors. Such shares neither import nor represent any right or claim in or

to, or to subject to their payment the assets of the corporation as against the rights of creditors. Shares purchased by the corporation have no value as assets for the payment of corporate debts. Obviously, therefore, the transaction involves, on the one hand, the diversion of corporate assets to persons—shareholders—who have no debt against the company, nor the shadow of claim to or against its assets so far as creditors are concerned, and, on the other, the acquisition by the company, in the stead of assets thus diverted, of a mere right to reissue certain shares, or shares to a certain amount in its capital, which right is of no value as assets for creditors. Such a diversion of corporate property is, in respect of creditors, essentially a gift to the shareholders whose shares are purchased by the company, a purely voluntary transfer of corporate assets in fraud of corporate creditors, fraudulent and void as to creditors, and this, regardless of the intention actuating the company and the selling shareholders. *  *  * Money is leviable property, *  *  * and money paid by a debtor corporation for shares of its own stock is property fraudulently transferred, which may be reached and subjected by the creditor." See, also, *Ala. Terminal Co. v. Hall,* 152 Ala. 262, 44 South. 592.

That a trustee in bankruptcy may maintain such a bill is settled in this state beyond controversy.—*Cartwright v. West,* 173 Ala. 198, 55 South. 917.

"As such he stands in the place of the creditors, and may recover in any case where the creditors could have recovered."—*Exchange Nat. Bank v. Stewart,* 158 Ala. 218, 48 South. 487.

Nor is it necessary that the bill aver that complainant now represents those who were creditors at the time of the transfer, or that the bill charge actual fraudulent intent. As said in *Ala. Terminal Co. v. Hall,* 152 Ala. 262, 44 South. 597:

"The transaction being infected with actual fraud,. whether directed against existing or subsequent credi-tors, either can successfully impeach it."

And again in *Yeend, Adm'r, v. Weeks,* 104 Ala. 339, 16 South. 166, 53 Am. St. Rep. 50:

"Such a conveyance, when not tainted with actual fraud, is void only as to antecedent debts; but if made with an intent to hinder, delay, and defraud creditors, which is actual fraud, it is void as to subsequent, as well as to existing, creditors."

Also, *Seals v. Robinson,* 75 Ala. 363, headnote 5.

In the case of *Atlanta & Walworth B. & C. Ass'n v.. Smith,* 141 Wis. 377 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42, it was held that a purchase by a corporation of its own stock, known by the par-ties to the transaction, or which ought to be known to them, to render it insolvent, is not a purchase in good faith as to existing creditors and not such as to future creditors if the parties to the transaction contemplate that the corporation will continue to do business and incur indebtedness, as before on the faith of its previ-ously supposed solvency continuing.

"In such a case the stockholder surrendering his stock is to be regarded as having acted fraudulently, at least constructively, as to existing creditors, and subsequent creditors as well."

It was held, as appears, that such facts supplied the element of bad intent. We merely cite the case because of interest in this connection and not by way of au-thority, as the bill here under review avers the actual fraudulent intent.

The trust-fund doctrine, as to assets of insolvent cor-porations, established by statute (section 3509, Code 1907), and which has been the subject of comment in this court (*City Bank & Trust Co. v. Leonard,* 168 Ala..

404, 53 South. 71; *Warren v. Kilgore,* 176 Ala. 476, 58 South. 432), may add some strength to the bill; but its equity is in no wise dependent upon this principle. The authorities heretofore cited demonstrate the equity of the bill upon the theory to set aside a fraudulent conveyance or transfer.

The bill is not objectionable for joining other respondents charged with similar transactions. This has often been decided. *Exchange Nat. Bank v. Stewart, supra,* and authorities there cited.

If it could be said any defect exists in the bill as to averment of insolvency (which need not be and is not determined) as argued by counsel in brief, citing *Corey v. Wadsworth,* 99 Ala. 78, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29, the point is not taken by any assignment of demurrer.

We have carefully considered each assignment of demurrer and conclude the chancellor properly overruled the demurrer to the bill, and the decree of the chancellor is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.