## BOARD OF EDUCATION OF SALT LAKE CITY, UTAH, et al. v. LEARY (three cases).

(Circuit Court of Appeals, Eighth Circuit. October 13, 1916.)

Nos. 175, 4708, 4709.

1. BANKRUPTCY ☞440—REVIEW—PETITION TO REVISE.

Where, in a proceeding by a trustee in bankruptcy for a summary order to obtain possession of property, the District Court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on petition to revise.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ☞440.]

2. BANKRUPTCY ☞293(1)—PROCEEDINGS—JURISDICTION OF DISTRICT COURT.

Where defendant had possession of property long prior to the filing of the petition in bankruptcy, claiming a lien thereon and asserting title to it under contract, the bankruptcy court, on petition by the trustee for a summary order requiring delivery of possession, is without jurisdiction to determine title to the property, defendant filing an answer asserting its adverse claim of lien and title and challenging the summary jurisdiction of the court, for in such case the court could proceed to summarily adjudicate the matter only by consent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411; Dec. Dig. ☞293(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ⨪288(1)—PROCEEDINGS—JURISDICTION—APPEARANCE.

    Upon a contractor's default, the board of education of a city took possession of his property used in the work, asserting a lien thereon, and subsequently recovered judgment against the contractor and his surety, which provided that upon payment the surety should be subrogated to all the rights of the board. On petition by the trustee in bankruptcy of the contractor for a summary order requiring delivery of possession, the surety, which had not paid the judgment, voluntarily appeared, but announced that counsel for the board would represent its interests. *Held* that, as the surety had not paid the judgment and was not subrogated to the rights of the board, the bankruptcy court did not have jurisdiction over the proceeding on the theory that the surety was the real party in interest, and, having voluntarily appeared, a plenary suit was unnecessary.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⨪288(1).]

Petition to Revise Order, Appeal from, and in Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Petition by William H. Leary, trustee in bankruptcy, of the Wright-Osborn Company, a corporation, bankrupt, against the Board of Education of Salt Lake City, Utah, and another. A summary order of the referee was confirmed by the District Court on petition for review, and defendants petition to revise, appeal, and bring error. Appeal and writ of error dismissed, petition to revise sustained, and order set aside.

A. L. Hoppaugh, of Salt Lake City, Utah (E. A. Walton, Benner X. Smith, M. E. Wilson, and T. D. Walton, all of Salt Lake City, Utah, on the brief), for petitioners, appellants and plaintiffs in error.

J. D. Skeen, of Salt Lake City, Utah (D. A. Skeen and W. H. Wilkins, both of Salt Lake City, Utah, on the brief), for respondent, appellee, and defendant in error.

Before CARLAND, Circuit Judge, and TRIEBER and VAN VALKENBURGH, District Judges.

  VAN VALKENBURGH, District Judge. July 1, 1912, the Board of Education of Salt Lake City, Utah, contracted with Wright-Osborn Company, a corporation, to install a heating and ventilating system in the Salt Lake High School Building for the sum of $53,789. The contractor furnished to the Board of Education a performance bond with Fidelity & Deposit Company of Maryland as surety. The written contract between the parties contained the following among other provisions:

    "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the said second party shall be at liberty, after three days' written notice to the contractor or to any of his agents, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under the contract, and such certificates of the architects, together

with the action of the board thereon, shall be final and conclusive; and if the architects shall certify that such action be taken, the said second party shall also be at liberty at once to terminate the employment of the contractor for the said work, and immediately to enter upon the premises and to take possession of all materials thereon, together with all tools, machinery, apparatus, and conveniences, and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expenses incurred by the said second party in finishing the work, such excess shall be paid by the said second party to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the said second party. The expense incurred by the said second party, as herein provided, either for furnishing materials, or for finishing the work and any damages incurred through such default, together with the value of the use of tools, machinery, materials, and conveniences that may be taken by the said second party, shall be audited and certified by the architects, and the decision of the said second party thereon shall be final and conclusive. And this shall be construed to mean, not only the completion of the heating and ventilating system for the buildings, but the removal of all rubbish from the same, as well as from the grounds."

The Wright-Osborn Company entered upon the work, took materials and tools to the grounds, installed the boilers, and received the sum of $7,083 as partial payment on account, which was credited on the contract price. The company continued its work, under the contract, until on or about January 17, 1913, on which date, upon certificate of the architects in charge, the Board of Education terminated the employment because of various alleged breaches of the contractor, among which was the furnishing of material certified to be defective and not in accordance with specifications. The Board, under the provisions of the contract, completed the work at an alleged loss of $23,410.56, which included payments theretofore made to the contractor. It retained possession of and used some of the tools and materials which it took over upon assuming the completion of the work. On or about August 24, 1914, it brought suit in the state court within and for Salt Lake county, Utah, against the Wright-Osborn Company and its surety to recover its loss aforesaid. October 23, 1915, judgment, in the sum of $17,041.55, was entered in its favor. The Board, at all times since January 17, 1913, had retained in its possession certain materials and tools which had been placed upon its property by the contractor, and upon which it claimed a lien under its contract and in equity for the partial satisfaction of the contractor's indebtedness to it. Respecting such materials and tools the state court made the following provision in the judgment entered:

"And it further appearing to the court that upon the payment to the plaintiff by the defendant, Fidelity & Deposit Company of Maryland, of said judgment, and interest thereon and costs, that it should be subrogated to the rights of the plaintiff in and to said materials and tools. Now, therefore, it is hereby ordered, adjudged, and decreed that upon the payment to the plaintiff by the defendant, Fidelity & Deposit Company of Maryland, of the amount of said judgment and interest and costs, that it shall be subrogated to all the rights of the plaintiff under said contract for the repayment by the said Wright-Osborn Company of the moneys so paid, and as security for said payment, it is entitled to the said materials and tools and that said

defendant shall thereupon be entitled to the possession thereof, and that the plaintiff shall thereupon deliver to said defendant, Fidelity & Deposit Company of Maryland, the possession thereof."

This judgment still remains unsatisfied. Meantime, on April 5, 1913, a petition in bankruptcy was filed against the Wright-Osborn Company, and an adjudication followed on June 12, 1913. On July 20, 1915, more than two years after the adjudication, and during the pendency of the proceeding in the state court, William H. Leary, trustee, filed in the District Court of the United States at Salt Lake City a petition praying a summary order upon the Board of Education requiring it to deliver to said trustee the materials and tools retained and held by the Board as aforesaid. The Board answered, claiming a lien upon and title to said property, and denying the summary jurisdiction of the bankruptcy court. Issues were framed upon which, on the 6th day of January, 1916, the referee made an order retaining jurisdiction in the premises, holding that the Board had neither title to nor lien upon the property in question, and directing the trustee to take the same into his possession. Upon petition for review, this order of the referee was confirmed by the District Court.

Two specifications of error are presented: (1) The court erred in holding that the bankruptcy court had summary jurisdiction. (2) The court erred in its decision on the merits. In our opinion it will be necessary to consider only the first of these assignments.

[1] Counsel for the Board of Education, being in doubt as to the method provided by the Bankruptcy Act to insure a review by this court, have adopted the expedient of bringing their case here by petition to revise, by appeal, and by writ of error. In the view we take, it is unnecessary to determine whether appeal will lie, and a writ of error cannot be entertained. Both are accordingly dismissed. It is conclusively established that where, in a case like this, the District Court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review. Shea et al. v. Lewis et al., 206 Fed. 877, 880, 124 C. C. A. 537, and cases cited; Courtney v. Shea et al., 225 Fed. 358, 140 C. C. A. 382.

[2] It will be remembered that the petitioner, Board of Education, had possession of the property in question long prior to the filing of the petition in bankruptcy, and claimed a lien upon and title to it, under contract and otherwise, to recoup itself for any losses that might accrue from alleged breaches on the part of the contractor. That property had never been reduced to possession by the trustee, or any other officer of the bankruptcy court, as the property of the bankrupt. When the trustee filed his reclamation petition, on the 28th of July, 1915, upon which the order here complained of is based, the Board of Education promptly filed answer asserting its adverse claim of lien and title and challenging the summary jurisdiction of the bankruptcy court. Under such circumstances, it seems unnecessary to do more than to cite respondent to the repeated decisions of this court in which the rule, and the reasoning upon which it is founded, have been stated with elaboration. In re Rathman, 183 Fed. 913, 106 C. C. A. 253;

Shea et al. v. Lewis et al., 206 Fed. 877, 880, 124 C. C. A. 537. In the latter case it was said:

"The bankruptcy court, however, has jurisdiction under an order to show cause to investigate and determine whether or not it had at the time the petition for the order to show cause was filed, or at any other time, actual possession of the property involved in the order, and whether those asserting lien or title have a substantial, or only a frivolous and baseless, adverse claim. In re Rathman, 183 Fed. 913, 918, 106 C. C. A. 253; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. If it had no such possession, and if the claim asserted is actual and substantial, as distinguished from one merely colorable and fictitious, it may proceed no further, but should decline to adjudicate on the merits without consent. If it errs in its ruling either way, its action is subject to review. Mueller v. Nugent, 184 U. S. 1, 15, 22 Sup. Ct. 269, 46 L. Ed. 405. Such a claim may be adverse and substantial, even though in fact fraudulent and voidable. Johnston v. Spencer, 195 Fed. 215, 115 C. C. A. 167; Cooney v. Collins, 176 Fed. 189, 192, 99 C. C. A. 543; Mueller v. Nugent, 184 U. S. 15, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Michie (D. C.) 116 Fed. 749."

It is apparent from the statement of the case that the contention of the petitioner discloses a contested matter of right, involving some fair doubt and reasonable room for controversy, as distinguished from a claim merely colorable or fictitious. It asserts an adverse claim to the property in controversy which entitles it to a trial in due course rather than in a summary proceeding. Shea et al. v. Lewis et al., supra; Johnston v. Spencer, 195 Fed. 215, 220, 115 C. C. A. 167; In re Rathman, 183 Fed. 913, 929, 106 C. C. A. 253.

[3] The claim, however, is made that under the right of subrogation adjudged to it in the state court the Surety Company and not the Board of Education is the real party in interest; that the former company voluntarily appeared in this proceeding and submitted to the jurisdiction of the bankruptcy court; but the judgment of the state court conferred this right upon the Surety Company only upon the condition that it should pay to the Board of Education the amount of that judgment with interest and costs. This condition has not yet been performed, and the interest of the Board of Education is substantial and subsisting. Furthermore, counsel for the Surety Company, in entering its appearance, announced that:

"The interests of the school board and of my clients are the same so far as defeating the claim of the trustee in this action. Counsel for the board will represent our interests."

Thus the Surety Company adopted all the defenses interposed by the Board of Education, including its challenge to the jurisdiction of the bankruptcy court.

Counsel for respondent urge that, upon the evidence adduced, the finding upon the merits should be in its favor. But this, if true, does not meet the situation presented. The question is one of jurisdiction. The petitioners are asserting in good faith a superior lien upon, and title to, property in their possession, and never at any time in the possession of the trustee, or other officer of the bankruptcy court. They are entitled to have their rights adjudicated in a plenary action, unless

they voluntarily submit to the summary jurisdiction sought to be exercised. This they have consistently declined to do. If this right, guaranteed by the law and uniformly recognized by the courts, can be extinguished by an ultimate adverse decision on the merits, it becomes at once unsubstantial and valueless.

The petition to revise is sustained, and the order of the District Court is vacated and set aside, with directions to dismiss the summary proceeding as to the property embraced within the order of the referee, without prejudice, however, to the right of the trustee, if so advised, to institute suit in a court of competent jurisdiction for the recovery of the property in question.

It is so ordered.